# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JACOB NATHANIEL VANDERWEKEN,<br><br>                    Plaintiff,<br><br>     v.<br><br>TY DAVIS; DEPUTY WARDEN MARTINEZ; C/O VAUGHN; VSC TOMLINSON; C/O SOMERS; and VSC BOROSSO,<br><br>                    Defendants. | Case No. 1:25-cv-00305-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Jacob Nathaniel VanderWeken's Complaint because of Plaintiff's status as an inmate and in forma pauperis request. A "conditional filing" means that a plaintiff must obtain authorization from the Court to proceed. Upon screening, the Court must dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

Having reviewed the record, the Court concludes that the Complaint fails to state a claim upon which relief may be granted. Accordingly, the Court enters the

following Order directing Plaintiff to file an amended complaint if Plaintiff intends to proceed.

## 1.    Standards of Law for Screening Complaints

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual

*and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## 2.    Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction, currently incarcerated at the Idaho State Correctional Center ("ISCC"). Plaintiff's claims arose when Plaintiff was incarcerated the Idaho State Correctional Institution ("ISCI").

Plaintiff states that, in March 2025, he was improperly issued a disciplinary offense report ("DOR") for walking too slowly. *Compl.*, Dkt. 3, at 5. Plaintiff was on his way to breakfast when Defendant Correctional Officer Vaughn told Plaintiff to walk faster. Plaintiff continued to walk slowly because he was in pain from an ankle injury. Vaughn later stated he did not see Plaintiff limping from an injury and issued Plaintiff the DOR for failing to walk faster when ordered.

In March and April 2025, while Plaintiff was attending chapel services and sitting next to another inmate who was Plaintiff's friend, Defendant Correctional Officer Somers "targeted" and "maliciously harassed" Plaintiff by ordering the two inmates to separate because they were too close to each other. *Id.* at 7. Plaintiff responded that they were not violating any prison regulations, and Somers threatened to "write [Plaintiff] up." *Id.*

Later, Plaintiff was attending chapel services and was again sitting next to his friend. Defendant Volunteer Service Coordinator Tomlinson told Plaintiff he was not allowed to sit next to the other inmate because they were talking and being disruptive. *Id*. at 6. Tomlinson also allegedly threatened Plaintiff with being "permanently" excluded from chapel services. When Plaintiff objected that Tomlinson could not do that, Tomlinson stated, "I can do what I want," and called Plaintiff and the other inmate "morons." *Id*. Plaintiff does not contend that he was actually excluded from chapel services.

Plaintiff submitted concern forms about these chapel issues, as well as a problem with Plaintiff not being called up to attend classes, to Defendant Chaplain Borosso. *Id*. at 3. It appears Borosso either did not respond to the concern forms or responded in a manner that was unsatisfactory to Plaintiff.

Plaintiff also alleges that Defendant Deputy Warden Martinez transferred Plaintiff from ISCI to ISCC in retaliation for Plaintiff's use of the grievance process. Specifically, Plaintiff had complained in a concern form that ISCI staff were harassing Plaintiff by making sexual comments and telling him he could not sit next to his friend during chapel services. *Id*. at 3. After Plaintiff submitted the concern form, he was transferred. *Id*. at 3–4. Defendant Warden Davis allegedly "allowed" Martinez to make the transfer. *Id*. at 3.

Plaintiff asserts claims under the federal civil rights statute, 42 U.S.C. § 1983, as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., Plaintiff also brings negligence claims under Idaho state law. *Compl*. at 3–8.

## 3.    Discussion

Plaintiff has not stated a claim upon which relief may be granted. The Court will, however, grant Plaintiff 28 days to amend the Complaint. Any amended complaint should take into consideration the following.

### A.    *Section 1983 Claims*

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

That is, prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the

alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title

notwithstanding, is only liable for his or her own misconduct."). Section 1983 does

not allow for recovery against an employer or principal simply because an

employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045. Moreover, a

defendant whose only role in a constitutional violation involved the denial of an

administrative grievance cannot be held liable under § 1983. *Shehee v. Luttrell*,

199 F.3d 295, 300 (6th Cir. 1999).

However, "[a] defendant may be held liable as a supervisor under § 1983 'if

there exists … a sufficient causal connection between the supervisor's wrongful

conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th

Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A

plaintiff can establish this causal connection by alleging a defendant (1) set in

motion a series of acts by others that violated the Constitution, or knowingly

refused to terminate a series of such acts, which the supervisor "knew or

reasonably should have known would cause others to inflict a constitutional

injury"; (2) knowingly failed to act or acted improperly "in the training,

supervision, or control of his subordinates"; (3) acquiesced in the constitutional

deprivation; or (4) engaged in conduct showing "a reckless or callous indifference

to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### i.    First Amendment Free Speech and Right-to-Petition Claims

Plaintiff alleges that Defendant Borosso violated the First Amendment either by not responding to Plaintiff's concern forms at all or by not responding to Plaintiff's satisfaction. *Compl*. at 8.

The First Amendment includes the right to free speech and the right to petition the government for redress of grievances. U.S. Const., amend. I. However, an individual's "right to petition the government is a right of expression" *only*—it "does not guarantee a response to the petition or the right to compel government officials to act on the petition." *Chacon v. Diaz*, 2020 WL 7220459, at *5 (C.D. Cal. Nov. 25, 2020) (unpublished), *report and recommendation adopted*, No. ED-CV-20-1898-JWH (KS), 2021 WL 275924 (C.D. Cal. Jan. 27, 2021), *aff'd*, No. 21-55182, 2025 WL 799485 (9th Cir. Mar. 13, 2025). That is, although an individual has a right to "speak freely and petition openly, and … is protected by the First Amendment from retaliation for doing so," the First Amendment "provides no

guarantee that a speech will persuade or that advocacy will be effective." *Smith v. Arkansas State Highway Emp., Loc. 1315*, 441 U.S. 463, 465 (1979).

Plaintiff acknowledges that he submitted concern forms to Defendant Borosso. This is all that is required under the right to free speech and to petition for redress. Therefore, these claims are implausible and must be dismissed.

ii.    First Amendment Free Exercise Claims

Plaintiff claims that Defendants' refusal to allow Plaintiff to sit next to his friend during chapel services violated the First Amendment.

The First Amendment right to "freedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). This right is "necessarily curtailed by the realities of confinement" and "may be curtailed whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations, whether through group meetings or otherwise, possess the likelihood of disruption to prison order or stability, or otherwise interfere with the legitimate penological objectives of the prison environment." *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132 (1977). Any restriction on an inmate's association with others is valid so long as "it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

The Complaint acknowledges that Plaintiff was told he could not sit next to his friend in chapel services because they were talking and being disruptive, *see Compl.* at 6, and does not plausibly allege that this restriction was not reasonably related to legitimate penological interests, *see Turner*, 482 U.S. at 89. Accordingly, Plaintiff has failed to state a plausible free association claim. *See Jones*, 433 U.S. at 132.

The First Amendment also contains the Free Exercise Clause. That clause absolutely protects the right to believe in a religion—it does not absolutely protect all conduct associated with a religion. *Cantwell v. Connecticut*, 310 U.S. 296, 303–04 (1940). Inmates retain their free exercise of religion rights in prison. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). An inmate who is an adherent of a minority religion must be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam). A prison need not, however, provide "identical facilities or personnel" for "every religious sect or group within a prison," and a "special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." *Id.* at 322 n.2.

To serve as a basis for a viable claim challenging a prison restriction under the Free Exercise Clause, an inmate's belief must be both sincerely held and rooted in religious belief. *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). Further, the burden placed on the inmate's religious exercise by the defendants' actions must be substantial. *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). *De minimis*—or minor—burdens on the free exercise of religion are not of a constitutional dimension, even if the belief upon which the exercise is based is sincerely held and rooted in religious belief. *See, e.g.*, *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (the unavailability of a non-pork tray for inmate at 3 meals out of 810 does not constitute more than a *de minimis* burden on inmate's free exercise of religion).

Challenges to prison restrictions that are alleged "to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Jones*, 433 U.S. at 125 (quotation omitted). What constitutes a reasonable opportunity for religious exercise, therefore, must be evaluated within the context of a prison's need for security, among other legitimate goals. *O'Lone*, 482 U.S. at 350–53 (1987) (holding that a prison's policy of not allowing Muslim inmates on work detail to

return to the prison to attend Jumu'ah, a group worship service, did not violate the Constitution).

As long as a restriction on an inmate's religious practice "is reasonably related to legitimate penological interests," that restriction does not violate the Free Exercise Clause. *Turner*, 482 U.S. at 89. Factors to be considered in this reasonableness inquiry include (1) whether there is a logical connection between the governmental interest and the particular policy or decision at issue; (2) whether "alternative means of exercising the right remain open to prison inmates"; (3) the impact that accommodating a prisoner's religious practice would have on "other inmates, on prison personnel, and on allocation of prison resources generally"; and (4) whether there is an absence of "obvious, easy alternatives" to the policy or decision. *O'Lone*, 482 U.S. at 350–53 (internal quotation marks and alterations omitted). Courts must take care to avoid "substitut[ing] [their] judgment on difficult and sensitive matters of institutional administration." *Id*. at 353 (internal quotation marks and alteration omitted).

The Complaint fails to state a plausible free exercise claim for two reasons. First, the Complaint does not describe Plaintiff's religious beliefs, nor does it give rise to a reasonable inference that being unable to sit next to the inmate of Plaintiff's choice during chapel services constitutes a substantial burden on the exercise of Plaintiff's religious beliefs. *See Hernandez*, 490 U.S. at 699; *Rapier*,

172 F.3d at 1006 n.4. Second, Plaintiff's allegations do not support a plausible inference that prohibiting inmates who are speaking to each other during chapel services is not reasonably related to the legitimate penological goal of ensuring that all inmates in chapel are permitted an opportunity to worship without interference or disruption from others. *See Turner*, 482 U.S. at 89. Accordingly, Plaintiff has not stated a colorable free exercise claim.

### iii.    First Amendment Retaliation Claims

Plaintiff claims that Defendants Davis, Martinez, Tomlinson, and Somers all retaliated against Plaintiff for raising concerns about his chapel problems and other issues in the prison. These Defendants' purportedly adverse actions against Plaintiff included transferring Plaintiff to a different prison and refusing to allow Plaintiff to sit next to his friend in chapel.

The First Amendment includes the right to be free from retaliation for exercising constitutional rights. An inmate asserting a retaliation claim must show the following: "(1) ... that a state actor took some adverse action against the inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) [that] the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

"[B]are allegations" of a retaliatory motive are insufficient to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."). Rather, when analyzing a prison official's proffered reasons for allegedly retaliatory conduct, the Court must "afford appropriate deference and flexibility" to that official. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (internal quotation marks omitted).

Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted). If it would not, then "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). *See also Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) ("The [*de minimis*] standard achieves the proper balance between the need to recognize valid retaliation claims and the danger of federal courts embroiling themselves in every disciplinary act that occurs in state penal institutions.") (internal quotation marks and alteration omitted).

A plaintiff asserting a retaliation claim under § 1983 also "must show a causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (*Bivens* action). Retaliatory motivation is not established simply by showing an adverse action by the defendant *after* protected speech. Instead, the plaintiff must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'"). Therefore, although the timing of an official's action can constitute circumstantial evidence of retaliation—if, for example, an adverse action was taken shortly after the official learned about an inmate's exercise of protected conduct—there generally must be something more than mere timing to support an inference of retaliatory intent. *Pratt*, 65 F.3d at 808.

The causal nexus requirement of a retaliation claim is a "but-for" causation test. If the adverse action would have been taken even without the inmate's exercise of protected conduct, the plaintiff cannot satisfy the causation element of the retaliation claim. *Hartman*, 547 U.S. at 260.

Finally, even if an inmate proves that his protected conduct was the but-for cause of an adverse action by a prison official, the inmate's retaliation claim fails so long as that action also reasonably advanced a legitimate penological interest.

*Turner*, 482 U.S. at 89. The state unquestionably has a legitimate interest in maintaining institutional order, safety, and security in its prisons, *Rizzo*, 778 F.2d at 532, and the "plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains," *Pratt*, 65 F.3d at 806.

The Complaint plausibly suggests only that Defendants took an action after Plaintiff complained about prison problems. This is merely a bare allegation of retaliatory intent and is insufficient to plausibly support an inference that Plaintiff's exercise of protect conduct was the motive behind any Defendant's actions. *See Pratt*, 65 F.3d at 808; *Rizzo*, 778 F.2d at 532 n.4. Moreover, being transferred to a different prison and being told not to sit with a particular inmate simply are not the type of adverse actions that would chill a person of ordinary firmness from engaging in protected conduct. *See Mendocino Envt'l Ctr.*, 192 F.3d at 1300. Therefore, Plaintiff has not stated a plausible retaliation claim.

iv.    <u>Eighth Amendment Claim</u>

Plaintiff alleges that his transfer from ISCI to ISCC violated the Eighth Amendment, which protects prisoners against cruel and unusual punishment and guarantees the right to minimally adequate conditions of confinement.

"[T]he Constitution does not mandate comfortable prisons, and prisons … which house persons convicted of serious crimes[] cannot be free of discomfort."

*Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, though prison conditions may be restrictive—even harsh—without violating the Eighth Amendment, prison officials are required to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Id.* at 347; *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). The United States Supreme Court has emphasized that the Eighth Amendment should be reserved for serious incidents causing "unnecessary and wanton infliction of pain," where such pain has been inflicted by prison officials' "deliberate indifference to the inmates' health or safety." *Hope v. Pelzer*, 536 U.S. 730, 737-38 (2002) (internal quotation marks omitted.

　　　To state a claim under the Eighth Amendment, a prisoner must show that he is (or was) "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

As for the objective prong of the analysis, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, the deprivation alleged must be objectively sufficiently harmful or, in other words, sufficiently "grave" or "serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see Whitley*, 475 U.S. at 319 ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.") (internal quotation marks and alteration omitted).

With respect to the subjective prong of an Eighth Amendment violation, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319.

To exhibit deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cty. of*

*Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro*, 833 F.3d 1060. Moreover, even prison officials who *did* actually know of a substantial risk to inmate health or safety will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

The Complaint does not plausibly suggest that Plaintiff's transfer placed him at a substantial risk of serious harm or deprived of him of the minimal civilized measure of life's necessities. *See Farmer*, 511 U.S. at 834. Merely transferring Plaintiff simply does not constitute cruel and unusual punishment. Nor does the Complaint plausibly allege that Defendants Martinez or Davis acted with deliberate indifference in deciding to transfer Plaintiff. Therefore, the transfer claim fails under the Eighth Amendment.

Plaintiff also may be asserting a claim of verbal harassment based on being told not to sit near his friend and on being called a moron. However, verbal harassment, abuse, or threats, without more, are not sufficient to state a constitutional deprivation under § 1983. *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987) (allegations that correctional counselor told plaintiff that he would transfer him to a higher custody status unit if he tried to go to the law library and that he would be sorry if he filed a class action suit were not actionable under § 1983); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (allegations that

defendant "personally informed plaintiff that if he never cut his hair and shaved his beard that he would lose what class he had and would have a bad time at Wrightsville" and that defendant "verbally abused and threatened him for filing grievances" did not constitute a constitutional violation); *McFadden v. Lucas*, 713 F.2d 143, 147 (5th Cir. 1983) ("While twenty-two officers armed with sticks and threatening demeanor may arguably be excessive, we must, in the absence of physical abuse, concur with the lower court's dismissal. The alleged conduct, absent more, cannot be said to rise to the level of conduct which 'shocks the conscience'" (citation omitted)).

The verbal harassment Plaintiff allegedly suffered is not the type of "calculated harassment" that can be a basis for a civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). Rather than being the sort of "physical torture against which the Constitution clearly protects," Plaintiff's allegations are much closer to "the *de minimis* harms against which it does not." *McKune v. Lile*, 536 U.S. 24, 41 (2002). Thus, this claim is subject to dismissal.

v.    Due Process Claim

Plaintiff alleges that his transfer to a different prison also violated the Due Process Clause of the Fourteenth Amendment. That clause prohibits state action that deprives a person of life, liberty, or property without due process of law. A plaintiff cannot obtain relief on a due process claim unless he demonstrates that he

was deprived of one of these protected interests. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989). Because prisoners' liberty is necessarily circumscribed as a result of conviction, prisoners have a liberty interest in freedom from restraint only if a change occurs in confinement that imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

It is well established that an inmate has no constitutional right or liberty interest in being housed at a particular facility. *See, e.g., Meachum v. Fano*, 427 U.S. 215, 218 (1976) ("Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections …."); *McKune*, 536 U.S. at 39 ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). Therefore, Plaintiff's due process claim based on his prison transfer is implausible.

### B.    RLUIPA Claims

Plaintiff contends that, in addition to violating the First Amendment's Free Exercise Clause, Defendants' actions in prohibiting Plaintiff from sitting next to his friend in chapel also violated RLUIPA.

RLUIPA provides, "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the

burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person[] (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). RLUIPA applies to entities receiving federal financial assistance. *Id*. at (b)(1). By accepting federal funds, however, states do not waive sovereign immunity to suits for money damages under RLUIPA. *Sossamon v. Texas*, 563 U.S. 277, 280 (2011). Further, although the statute provides for injunctive relief, RLUIPA does not allow for monetary damages against individuals. *Wood v. Yordy*, 753 F.3d 899, 902–04 (9th Cir. 2014).

An inmate asserting a claim under RLUIPA must plausibly allege that the governmental action constitutes a substantial burden on the exercise of the inmate's religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). For an official's action to constitute a substantial burden on an inmate's religious exercise, it "must impose a significantly great restriction or onus upon such exercise." *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). In determining whether an inmate's religious exercise is substantially burdened, a court may not inquire "into whether a particular belief is 'central' to a prisoner's religion." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13

(2005) (quoting 42 U.S.C. § 2000cc-5(7)(A)). However, "the Act does not

preclude inquiry into the sincerity of a prisoner's professed religiosity." *Id.*

    If the inmate establishes "the prima facie existence" of a substantial burden

on the exercise of the inmate's religion, then the burden shifts to prison officials

"to prove that [the] substantial burden on [the inmate's] exercise of his religious

beliefs is *both* 'in furtherance of a compelling governmental interest' *and* the 'least

restrictive means of furthering that compelling governmental interest.'"

*Warsoldier*, 418 F.3d at 995 (quoting 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b)).

    Although RLUIPA is to be construed broadly in favor of protecting an

inmate's religious rights, *id.*, the statute does not "elevate accommodation of

religious observances over an institution's need to maintain order and safety,"

*Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005). A prisoner's requests for religious

accommodation must not override other significant interests within a prison

setting. "Should inmate requests for religious accommodations become excessive,

impose unjustified burdens on other institutionalized persons, or jeopardize the

effective functioning of an institution, the facility would be free to resist the

imposition." *Id.* at 726. In the words of the Supreme Court, "context matters." *Id.*

at 723 (quotation marks and alteration omitted).

    As the Court explained above with respect to the Free Exercise Clause, the

allegations in the Complaint do not support a reasonable inference that merely

being asked not to sit with a particular inmate at chapel constitutes a "significantly

great restriction or onus upon" Plaintiff's exercise of his religious beliefs. *See San*

*Jose Christian College*, 360 F.3d at 1034. Therefore, Plaintiff's RLUIPA claims

are implausible.

      **C.**    ***ADA Claim***

      Plaintiff claims that Defendant Vaughn's issuance of a DOR against Plaintiff

for walking too slowly violated the ADA.

      The ADA generally prohibits discrimination on the basis of an individual's

disability. In order to proceed with an ADA claim, a plaintiff must plausibly allege

(1) that he is a qualified individual with a disability; (2) that he is otherwise

qualified to participate in or receive a public entity's services, programs, or

activities; (3) that he was denied the benefits of those services, programs, or

activities, or was otherwise discriminated against by the public entity; and (4) that

such exclusion, denial of benefits, or discrimination was *by reason of* his disability.

*See Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th

Cir. 1997). By statutory definition, a Title II ADA claim must be brought against

the state or state entity. *See United States v. Georgia*, 546 U.S. 151, 159 (2006)

(holding that Title II of the ADA validly abrogates Eleventh Amendment immunity

for states for conduct that actually violates the Fourteenth Amendment); *Vinson v.*

*Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action

under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act.").

Under the ADA, a governmental entity is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). "The ADA does not require perfect parity among programs offered by various facilities that are operated by the same umbrella institution. But an inmate cannot be categorically excluded from a beneficial prison program based on his or her disability alone." *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1221 (9th Cir. 2008).

Plaintiff has not alleged any facts that would plausibly support a claim under the ADA. An individual is considered disabled under the ADA if "a physical or mental impairment … substantially limits one or more major life activities" of the individual. 42 U.S.C. § 12102(1)(A). Although walking is a major life activity, *id*. § 12102(2)(A), it is plain that Plaintiff can walk—he just occasionally walks more slowly, which does not necessarily constitute a disability under the statute.

Moreover, even if Plaintiff is a qualified individual with a disability, there is nothing in the Complaint to suggest that Defendant Vaughn issued Plaintiff the

DOR *because of* that disability. Indeed, Plaintiff himself acknowledges Vaughn did not see evidence that Plaintiff was having trouble walking. Thus, a factfinder could not reasonably infer that Vaughn issued the DOR by reason of Plaintiff's ankle injury.

Finally, not being issued a DOR is not a service, program, or activity under the ADA. For these reasons, Plaintiff's ADA claim is implausible.

### D.    State Law Claim

In addition to claims under § 1983, RLUIPA, and the ADA, Plaintiff asserts a state law claim of negligence against Defendant Martinez with respect to Plaintiff's transfer to a different prison.

The elements of a negligence claim under Idaho law are "(1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage." *McDevitt v. Sportsman's Warehouse, Inc.*, 255 P.3d 1166, 1169 (Idaho 2011). A person breaches a duty when that person acts in a manner in which a reasonable person would not. *See Steed v. Grand Teton Council of the Boy Scouts of Am., Inc.*, 172 P.3d 1123, 1129 (Idaho 2007) (describing the reasonable person standard as a "negligence standard of care")).

The Complaint does not plausibly suggest that Defendant Martinez had a duty to avoid transferring Plaintiff to a different prison. Indeed, as the Court explained above, inmates have no federal liberty interest in being held in a particular facility, *see Meachum*, 427 U.S. at 218; *McKune*, 536 U.S. at 39, and the Court has found no Idaho authority for the proposition that inmates have any such interest under state law. Thus, Plaintiff's negligence claim is subject to dismissal for failure to state a claim.

Moreover, because the Complaint fails to state a federal claim upon which relief may be granted, the Court would decline to exercise supplemental jurisdiction over Plaintiff's state law claim in any event. If Plaintiff files an amended complaint, and if the amended complaint states a plausible state law claim, the Court will reconsider the issue of supplemental jurisdiction.

**4.    Standards for Amended Complaint**

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehrler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil

rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotation marks and alteration omitted).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular constitutional or statutory provision Plaintiff alleges has been violated; (6) facts alleging the elements of the violation are met; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant.

Further, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v.*

*Maricopa Cnty.*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate, numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff does not amend within 28 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1.      The Complaint fails to state a claim upon which relief may be granted. Plaintiff has 28 days within which to file an amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the amended complaint) a Motion to Review the Amended Complaint.

Alternatively, Plaintiff may file a Notice of Voluntary Dismissal if Plaintiff no longer intends to pursue this case.[1]

2.    If Plaintiff does not file a timely amended complaint, this case may be dismissed with prejudice and without further notice for failure to state a claim upon which relief may be granted, failure to prosecute, or failure to comply with a Court order. *See* 28 U.S.C. §§ 1915 and 1915A; Fed. R. Civ. P. 41(b).

3.    Because an amended complaint is required for Plaintiff to proceed, Plaintiff's request for appointment of counsel (Dkt. 10) is DENIED without prejudice. Plaintiff may renew the request for counsel in an amended complaint.

DATED: October 6, 2025

B. Lynn Winmill
U.S. District Court Judge

---

[1] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g). *Spencer v. Barajas*, 140 F.4th 1061, 1066 (9th Cir. 2025).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 29